

**ORDERED in the Southern District of Florida on June 23, 2011.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:                                                          Case No:   10-34473-AJC
ALEXANDER GRANDA
SSN: XXX-XX-0588
CARIDAD GRANDA                                    Chapter 13
SSN: XXX-XX-8156
_____Debtors_____/

**ORDER GRANTING MOTION TO VALUE AND DETERMINE SECURED**
**STATUS OF LIEN ON REAL PROPERTY (D.E. #33)**

THIS CAUSE came before the Court for hearing on March 24, 2011, upon the

Debtors' _Motion to Value and Determine Secured Status of Lien on Real Property_ (D.E.

#33; the "Motion") held by New York Community Bank, as Successor to Amtrust Bank

(hereafter "Lender").   Debtors' homestead property, located at 8380 N.W. 166 Terrace,

Miami Lakes, FL 33016 (hereafter "subject property"), is encumbered by two mortgages

held by Lender.   The first mortgage or senior lien (Account # 8931) on the subject property held by Lender secures a claim in the amount of $405,298.62 and Lender has filed Proof of Claim 4-1 at said amount.   Debtors are current on their payments to the Lender with regard to the first mortgage and are paying same directly to the Lender.   The second mortgage or junior lien (Account # 1038) on the subject property held by Lender secures a claim in the amount of $185,768.26 and Lender has filed Proof of Claim 10-1 at said amount.   The Debtors argue that the value of the subject property is $265,000.00, based on an appraisal of the subject property, and therefore Lender's secured interest in the property by virtue of its second mortgage is zero and accordingly its lien therefor should be "stripped off" and classified as an unsecured debt for the purposes of this bankruptcy case.

## Background and Material Facts

On August 18, 2010, the Debtors filed a Chapter 13 Voluntary Petition.   On November 17, 2010, Debtors filed their Motion to Value and Determine Secured Status of Lien on Real Property (D.E. #33).   On November 23, 2010, Debtors filed their First Amended Chapter 13 Plan which sought to value and "strip off" Lender's second mortgage (D.E. #42).   Thereafter, Lender filed its Objection to Confirmation (D.E. #49) and its Response to Debtors' Motion to Value and Determine Secured Status of Lien on Real Property (D.E. #50).

Both the Debtors and the Lender obtained appraisals of the subject property in preparation for the Evidentiary Hearing on Debtors' Motion to Value and Determine Secured Status of Lien on Real Property.   The Debtors' appraisal was conducted by Javier M. Veloso of Florida Appraisal Services, Inc.   He determined the value of the

property to be $265,000.00 based on the sales comparison approach (hereinafter "Debtors' Appraisal"). Lender's appraisal was conducted by Luis Alberto Penagos of Penser Appraisals. He determined the value of the subject property to be $415,000.00 based on a sales comparison approach.

Lender's appraiser, Mr. Penagos, testified that although the real estate market where the subject property is located is in a declining market, he did not feel that distress sales were indicative of current market values of the properties in the neighborhood where the subject property is located. Consequently, Mr. Penagos valued the subject property using the sales comparison approach, only taking into consideration non-distress sales.

Debtors' appraiser, Mr. Javier M. Veloso, testified that the real estate market where the subject property is located is in a declining market and thus far forty percent of the year to date sales in the area surrounding the subject property consisted of distress sales. Accordingly, Mr. Javier M. Veloso valued the subject property, using the sales comparison approach, taking into consideration the current market conditions and market trends which consist of distress sales.

Both appraisers agree that the overall real estate market surrounding the subject property is a declining market, yet each reach starkly different conclusions as to the valuation of the subject property. The difference in value between the two appraisals is $150,000.00, where the Debtors value the subject property at $265,000.00 and the Lender values the subject property at $415,000.00.

In making his determination as to the value of the subject property, Lender's appraiser, Mr. Penagos, primarily relied on three comparable sales in the surrounding

area where the subject property is located.   The comparable sales sold (actually closed) in November 2010 for $415,000.00, September 2010 for $428, 000 and June 2010 for $415,000.00.

Mr. Penagos testified that although the real estate market where the subject property is located is in a declining real estate market, he did not feel that distress sales were indicative of current market values in the area and should not be taken into consideration.   Accordingly, in formulating his opinion as to market value, Mr. Penagos solely relied on non-distress sales of property comparable to the subject property.   Due to Mr. Penagos opinion that distress sales are not indicative of current market values, it appears his appraisal is unfairly skewed so that it results in the highest possible range for the market value of property in the area.   Additionally, Mr. Penagos compared properties that either had greater lot/living square footage than Debtors' property or contained more rooms than Debtors' property. Further, and most importantly, Mr. Penagos testified that he did not feel the Miami-Dade Property Appraiser's valuation of properties for tax purposes was indicative of market value and therefore chose to ignore same in formulating his opinion.   Mr. Penagos stated he did not know the methodology used by the Miami-Dade Property Appraiser.

In making his determination as to the value of the subject property, the Debtors' appraiser, Mr. Javier M. Veloso, also relied on three comparable sales in the surrounding area where the subject property is located.   The comparable sales used sold on January 27, 2011 for $260,000.00, August 26 2010 for $285,000.00 and July 16, 2010 for $284,900.00.

Mr. Veloso testified that the subject property is located in a declining market and

thus far, forty percent of the year to date sales in the area surrounding the subject property consisted of distress sales. Accordingly, in formulating his opinion as to market value, Mr. Veloso relied only on distress sales of properties comparable to the subject property. He testified that a distress sale is defined as either a short sale or a foreclosure sale. Mr. Veloso was clear to explain that although distress sales are not the typical arms-length transactions, they are still a good indicator of market value. Specifically, in a foreclosure sale or REO sale, where the bank has retained a property after a foreclosure auction and is thereafter putting the property in the open market for sale, the bank lists the property for sale in the open market at a value considered to be the market value for a third party to openly make offers. However, it appears this approach unfairly skews the value to the lowest possible range for the market value. Notably, in the appraisal submitted into evidence by the Debtors, Mr. Veloso provided the Miami-Dade County Property Appraiser's valuation of properties for tax purposes which has the subject property valued at $281,269.00 for the 2010 tax year. The valuation by the Miami-Dade County Property Appraiser office appears to more closely support the market value Mr. Veloso reached in his appraisal.

## Analysis

Having considered the competing appraisals and the testimony of the experts who conducted them, the Court concludes the market value of the subject property is less than $405,298.62, the secured claim held by Lender's first mortgage on the subject property. Lender's appraisal is unreliable in that Mr. Penagos, despite testifying that the Debtors' property is located in an area where prices are declining, did not believe that distress sales were indicative of market value and therefore chose to ignore them in reaching his

conclusion that the subject property's market value is $415,000.00.    Moreover, Mr.

Penagos disregarded, in its entirety, the value attributed to the property by the

Miami-Dade County Property Appraiser.

The Debtors' appraisal is also unreliable because Mr. Veloso considered only

distress sales when choosing comparable properties.    Notwithstanding, the Court

believes Mr. Veloso's opinion is more closely indicative of the market value in that is it

more closely supported by the value attributed to the property by the Miami-Dade

Property Appraiser.    While the Creditor's appraisal is high and the Debtors' appraisal is

low, the Court finds of import that the Lender's appraisal completely ignored the

Miami-Dade County Property Appraiser's valuation of the subject property which is

$281,269.00.    For the foregoing reasons, the Court believes the market value of the

property is between $265,000 and $415,000 and closer to the value determined by the

Miami-Dade County Property Appraiser.    The Court acknowledges that appraisal is an

art, not a science, and that competent appraisers can disagree on value, but not to the

extent of the disagreement in this case.    The Court therefore concludes the market value

of the subject property is no more than $325,000, an amount substantially less than the

secured claim held by Lender's first mortgage on the subject property.

Accordingly, the Court FINDS as follows:

A.    The value of the debtors' real property (the "Real Property") located at

8380 NW 166 Terr., Miami Lakes, FL 33016, and more particularly

described as:

Lot 2, in Block 12, FIRST ADDITION TO ROYAL OAKS, according to the
Plat thereof as recorded in Plat Book 127, at Page 95 of the Public Records
of Miami-Dade County, Florida.

Is no more than $ 325,000.00 at the time of the filing of this case.

B.    The total of all claims secured by liens on the Real Property senior to the lien of New York Community Bank, as Successor to Amtrust Bank (the "Lender") is $405,298.62.

C.    The equity remaining in the Real Property after payment of all claims secured by liens senior to the lien of Lender is $0.00 and Lender has a secured interest in the Real Property in such amount.

It is therefore

**ORDERED AND ADJUDGED** as follows:

1.    The Motion is **GRANTED**.

2.    Lender has an allowed secured claim in the amount of $0.00.

3.    Lender's claim shall be classified as a secured claim in the amount provided in paragraph 2, above, and as a general unsecured claim in the amount of $185,768.26, regardless of the original classification in the proof of claim as filed.

5.    The Real Property may not be sold or refinanced without proper notice and further order of the Court.

6.    Notwithstanding the foregoing, this Order is not recordable or enforceable until the Debtors receive a discharge in this Chapter 13 case.

### 

Submitted By:
Henry Hernandez, Esq.
Navarro Hernandez, P.L.
255 Alhambra Circle, #640
Coral Gables, FL 33134
Phone: (305) 447-8707
Fax: (305) 447-3787

Attorney Henry Hernandez, Esq. is directed to serve a conformed copy of this Order on all interested parties immediately upon receipt hereof and to file a certificate of service.